UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------x

MIKLOS MOLDOVAN,

                         Plaintiff,            **MEMORANDUM & ORDER**
                                                 20-cv-4699(EK)(VMS)

        -against-

PRESTIGE CONSTRUCTION NYC, LLC, 635
ROCKAWAY, LLC, AND TFK ELECTRIC
CORP.,

                        Defendants.

------------------------------------x
ERIC KOMITEE, United States District Judge:

        Miklos Moldovan fell off a ladder while working at a Brooklyn construction site, injuring his left hand, back, and neck.  Invoking the Court's diversity jurisdiction, he sued the site owner, general contractor, and one subcontractor, arguing that they violated their duty to maintain a safe workplace. Notably, he did not sue the subcontractor that actually employed him.

        The parties have cross-moved for partial summary judgment on two of plaintiff's causes of action: New York Labor Law Sections 240(1) and 200.  Among other contentions, all defendants seek summary judgment because no reasonable jury could conclude (i) that they failed to supply proper protection to Moldovan, or (ii) that anyone other than Moldovan himself was the proximate cause of his injuries.  Additionally, defendant

TFK Electric argues that it is not a proper defendant to the Section 240(1) claim, and all three defendants argue the same contention as to Section 200.

For the reasons that follow, the plaintiff's and defendants' motions are granted in part and denied in part.

## I.    Background

The following facts are taken from the parties' Rule 56.1 Statements of Material Facts and the documents incorporated by reference therein.  They are undisputed unless otherwise noted.  We draw any inferences in favor of the non-moving party. *See Tenenbaum v. Williams*, 193 F.3d 581, 593 (2d Cir. 1999).

***The Parties.***  Moldovan sued three defendants. Defendant 635 Rockaway Avenue LLC owned a property located at its namesake location in Brooklyn, New York.  Def. R. 56.1 Statement ("Def. 56.1") ¶ 1, ECF No. 79.[1]  635 Rockaway hired defendant Prestige Construction NY, LLC as the general contractor to remodel the building. *Id.* ¶¶ 2, 26.  Prestige Construction, in turn, hired defendant TFK Electric Corporation to perform electrical work. *Id.* ¶ 3; Pl. Counter R. 56.1 Statement ("Pl. Counterstatement 56.1") ¶ 3, ECF No. 85.

TFK then subcontracted with plaintiff Moldovan's employer, AS HH Enterprises Corporation, to run wiring

---

[1] The parties also refer to the property as 589 Rockaway Avenue, Brooklyn, New York. *See* Def. 56.1 ¶ 1; Pl. R. 56.1 Statement ("Pl. 56.1") ¶ 1, ECF No. 83.

throughout the building.  Def. 56.1 ¶¶ 4, 19.  The division of
labor between TFK and AS HH is not entirely clear, but TFK's
principal stated that TFK's remit extended to "whatever is
connected with electrical work," including running or
implementing wiring and installing light fixtures.  Torok Dep.
Tr. 69:7-70:5, Def. Ex. B, ECF No. 77-2.

Moldovan worked as an electrician for AS HH
Enterprises.  Def. 56.1 ¶ 5; Pl. Counterstatement 56.1 ¶ 5
(agreeing that AS HH was plaintiff's employer).  Moldovan has
not sued AS HH Enterprises in this action.[2]

*The Accident.*  On July 23, 2020, Moldovan was working
at the site.  Def. 56.1 ¶ 6.  His job was to "wire the rooms,
put up outlet housings and switch[] housings, pull lines through
the housings[,] and run lines going to the electric box."  *Id.* ¶
7.  AS HH Enterprises owned six-foot and eight-foot ladders that
were available at the site.  Pl. Counterstatement 56.1 ¶ 8.

Moldovan's accident occurred on the sixth floor of the
building, in a "tiny room . . . similar to a utility room,"
which had a metal frame ceiling.  *Id.* ¶ 11.  At the time,
Moldovan was installing a "ceiling bar box" — that is, an
electrical housing for a light fixture.  *Id.*  To install the
box, Moldovan brought a 6-foot A-frame ladder into the utility

---

[2] 635 Rockaway and Prestige Construction brought a third-party complaint
against AS HH.  *See* ECF No. 30.  They voluntarily dismissed that complaint on
September 2, 2021.  *See* ECF No. 34.

room.  Def. 56.1 ¶ 12.  Moldovan did not request any other equipment "that could have been used instead of the ladder." *Id.* ¶ 18.

Moldovan set up the ladder by "placing it in the center of the room, unlock[ing] it ma[king] sure the two metal clamps were fully extended, and ma[king] sure all four of the legs were touching even ground." *Id.* ¶ 12.  He placed the ladder on level ground made of roughed-out concrete, which was clean and free of debris.  *Id.*  The ladder's four feet were covered in rubber.  *Id.* ¶ 13.  It had eight steps and was tall enough to reach the center of the ceiling where plaintiff planned to install the bar box.  *Id.*  Once the ladder was set up, Moldovan confirmed that it was locked on both sides, steady, and undamaged.  *Id.* ¶ 14.

Moldovan climbed the ladder, then steady, to the seventh rung and began installing the bar box.  Pl. Counterstatement 56.1 ¶ 15.  Before the accident, he had a screw gun in his right hand and was holding part of the exposed "grid of metal frames" above him.  Def. 56.1 ¶ 15; *see also* Moldovan Dep. Tr. 96:21-25, 98:4-8, Def. Ex. A, ECF No. 77-1 (Moldovan testifies that the grid was attached to the ceiling).  As Moldovan reached downward to retrieve a screw from his pouch, the "ladder shifted" and Moldovan "had to hold onto the [ceiling] frame because [he] became unstable*."*  Moldovan Dep. at

99:3-24.  Asked what caused the ladder to shift, Moldovan replied: "I don't know.  It just did." *Id.* at 99:25-100:5; Def. 56.1 ¶ 16.  The ladder did not fall.  Def. 56.1 ¶ 16.  Moldovan, however, fell off the ladder onto his lower back and cut his left hand on the ceiling frame.  Pl. 56.1 ¶ 18.

*On-Site Supervision.*  Jack Wolcowitz, a member of 635 Rockaway LLC, periodically visited the site to check in on the project's progress, as did Constanine Gubareff, a "project manager" who worked for a non-party.  Pl. Counterstatement 56.1 ¶ 27.  Still, in his deposition, Wolcowitz noted that 635 Rockaway did not have anyone "on site in and around July 2020." Wolcowitz Dep. Tr. 23:10-12, Def. Ex. D, ECF No. 77-4. Wolcowitz and Gubareff were in charge of the site on behalf of the owners.  Pl. Counterstatement 56.1 ¶ 27.  If Wolcowitz observed work that was dangerous or unsafe, he had the authority to stop it by speaking to the general contractor, Prestige Construction.  *Id.*

Gerber Blanco, Prestige Construction's safety supervisor, was on site on the day of the accident.  Def. 56.1 ¶ 22.  Moldovan's supervisor told Blanco about the accident soon after it occurred and Blanco went to investigate.  He saw a bent lamp, the ladder, and blood on the floor.  *Id.* ¶ 23-24.

Jozsef Torok, a TFK principal, was not at the site on the day of the accident.  Def. 56.1 ¶ 20.  When deposed, Torok

testified that he was at the worksite once or twice a week and that "if [he] saw something on the job site when [he] was there that was either dangerous or could have caused harm to an employee" he could "stop[] that work from continuing."  Torok Dep. Tr. 13:11-17, 24:10-15, Pl. Ex. D, ECF 82-4.

## II.  Legal Standard

Summary judgment is appropriate if the record demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed R. Civ. P. 56.  "A fact is material for these purposes if it might affect the outcome of the suit under the governing law.  An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[3]  *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 212 (2d Cir. 2001).

The moving party has the burden of demonstrating the absence of a question of material fact.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  If the movant carries its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment."  *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008).

---

[3] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

Additionally, "[w]hen faced with cross-motions for summary judgment, a district court is not required to grant judgment as a matter of law for one side or the other." *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993). "Rather, the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Id.*

This Court has diversity jurisdiction over the instant action. 28 U.S.C. § 1332(a)(2). "When sitting in diversity jurisdiction and determining New York state law claims, [federal courts] must apply the law of New York as interpreted by the New York Court of Appeals." *Deutsche Bank Nat'l Tr. Co. v. Quicken Loans Inc.*, 810 F.3d 861, 865 (2d Cir. 2015). Where the New York Court of Appeals has not spoken, "we consider the language of the state intermediate appellate courts to be helpful indicators of how the state's highest court would rule." *DiBella v. Hopkins*, 403 F.3d 102, 112 (2d Cir. 2005).

### III. Discussion

The Court first considers whether Moldovan has alleged a violation of New York Labor Law § 240(1), and then addresses TFK Electric's argument that it did not supervise plaintiff's work. Second, we turn to New York Labor Law § 200, and consider whether any of the defendants exercised the requisite control over Moldovan's work to be liable under the statute.

**A.    Section 240(1) Claim**

Plaintiff and defendants have cross-moved for summary judgment on plaintiff's cause of action alleging a violation of New York Labor Law Section 240(1).

1.    <u>Legal Standard Under Section 240(1)</u>

Section 240(1) requires owners, contractors, and their agents to furnish, or "cause to be furnished," ladders and other devices that are "so constructed, placed and operated as to give proper protection to" their employees.  N.Y. Lab. Law § 240(1). The statute obligates covered owners, contractors and agents "to provide safety devices necessary to protect workers from risks inherent in elevated work sites."  *Von Hegel v. Brixmor Sunshine Square, LLC*, 180 A.D.3d 727, 728 (N.Y. App. Div. 2d Dep't 2020). A covered defendant's liability is "absolute" — if it fails to provide proper protection, it is liable without respect to mental state, so long as the violation was a proximate cause of a plaintiff's injuries.  *Id.*  (As discussed in Section III(A)(3), TFK argues that it is not covered by Section 240(1) in this case.)

At the summary judgment stage, the plaintiff must offer evidence sufficient to establish, "*prima facie*," that the device in question did not offer proper protection.  *Melchor v. Singh*, 90 A.D.3d 866, 868-69 (N.Y. App. Div. 2d Dep't 2011) (citing cases); *Mora v. 1-10 Bush Terminal Owner, L.P.*, 214

A.D.3d 785, 786 (N.Y. App. Div. 2d Dep't 2023).  The plaintiff also bears the burden of showing that the violation was a proximate cause of his injuries.  *See Blake v. Neighborhood Hous. Services of N.Y. City*, 1 N.Y.3d 280, 290-91 (N.Y. 2003).  Where the plaintiff's own actions are the *sole* proximate cause of his injuries, he may not recover under Section 240(1).  *Id.*  At the same time, "where an accident is caused by a violation of the statute, the plaintiff's own negligence does not furnish a defense."  *Cahill v. Triborough Bridge & Tunnel Auth.*, 4 N.Y.3d 35, 39 (N.Y. 2004).  If the plaintiff carries these burdens, it falls to the defendants to raise a triable issue of fact as to whether there "was no statutory violation" or "whether the injured plaintiff's actions were the sole proximate cause of the accident."  *Mora*, 214 A.D.3d at 786.

Through this law, New York imposes a heavy burden on employers to ensure that ladders are secured in place (or that other safety precautions are taken) so that employees — even careless ones — are protected.  The state's "public policy protecting workers requires that the statute be liberally construed."  *Auriemma v. Biltmore Theatre, LLC*, 82 A.D.3d 1, 8 (N.Y. App. Div. 1st Dep't 2011).  To be sure, a "fall from a ladder, by itself, is not sufficient to impose liability under Labor Law § 240(1)."  *Melchor*, 90 A.D.3d at 868.  But "[t]he collapse of a scaffold or ladder for no apparent reason while a

plaintiff is engaged in an activity enumerated under the statute creates a presumption that the ladder or scaffold did not afford proper protection." *Yi Jiang Pai v. Nelson Senior Hous. Dev. Fund Corp.*, 232 A.D.3d 822, 825 (N.Y. App. Div. 2d Dep't Nov. 20, 2024).[4]

The plaintiff's obligation to make out a *prima facie* case does not require evidence that the ladder was defective. "[A]n unsecured ladder, even one in good condition, can give rise to Labor Law [S]ection 240(1) liability if the worker falls from it." *Noor v. City of New York*, 130 A.D.3d 536, 539 (N.Y. App. Div. 1st Dep't 2015). "It is sufficient for purposes of liability under Section 240(1) that adequate safety devices to prevent the ladder from slipping or to protect plaintiff from falling were absent." *McCarthy v. Turner Const., Inc.*, 52 A.D.3d 333, 334 (N.Y. App. Div. 1st Dep't 2008).

Thus, a ladder has not been adequately "secured" within the meaning of Section 240(1) simply because a worker has checked its bracing and believes it to be stable. New York courts read the statute to require ladders to be secured either by independent mechanical means, or by having a co-worker hold and secure it. *See Mora*, 214 A.D.3d at 786 (*prima facie* violation if the ladder is not secured to "something stable");

---

[4] The statute applies to all types of ladders, including the A-frame used here. *See, e.g.*, *Melaku v. AGA 15th Street, LLC*, 191 A.D.3d 410, 411 (N.Y. App. Div. 1st Dep't 2021).

*Rodriguez v. New York City Hous. Auth.*, 194 A.D.2d 460, 461-62 (N.Y. App. Div. 1st Dep't. 1993) (Section 240(1) was violated where the ladder that plaintiff fell from was not mechanically secured or supported by a co-worker).[5]

### 2. No Reasonable Juror Could Conclude that Plaintiff Was Provided Proper Protection

Given this legal standard, Moldovan's testimony that the ladder shifted for no apparent reason is sufficient to establish a *prima facie* case of a statutory violation. His testimony is also sufficient, if credited by a jury, for a finding that this shifting was the proximate cause of his fall. And defendants have not, in response, adduced evidence sufficient to raise a genuine dispute of fact. They do not suggest that the ladder was secured by any external device when it shifted. *See* Def. 56.1 ¶¶ 12-16.[6] On this record, no reasonable juror could find that Moldovan was provided with an adequate safety device.

The facts here are similar to *Canas v. Harbour at Blue Point Home Owners Association, Inc.*, 99 A.D.3d 962 (N.Y. App. Div. 2d Dep't 2012), and *Lopez-Dones v. 601 West Associates,*

---

[5] In *Mora*, the Appellate Division observed that "the fact that the ladder had four points of contact with the floor and had a brace in the middle to keep it open is immaterial to whether a statutory violation occurred." 214 A.D.3d at 786. It was enough that, on the record at summary judgment, it was "undisputed that the ladder was not secured to something stable and was not chocked or wedged in place." *Id.*

[6] Plaintiff also alleges that he was not provided with a harness or lifeline. *See* Pl. 56.1 ¶ 19. Since the ladder was unsecured, however, the Court need not address this alternative argument.

*LLC*, 98 A.D.3d 476 (N.Y. App. Div. 2d Dep't 2012).  In *Canas*, the Second Department held that the plaintiff had made a *prima facie* showing, and should have been awarded summary judgment, because "the ladder was not secured so as to prevent it and him from falling" as required.  99 A.D.3d at 963.  "Further, there was no assistance provided in holding the ladder . . . ."  *Id.* Similarly, in *Lopez-Dones*, the plaintiff was standing on an A-frame ladder that she had inspected and shook to assess stability prior to use.  98 A.D.3d at 478.  The ladder was not secured to the ground, nor was anyone holding it.  *Id.*  An object hit the ladder, causing Lopez-Dones to grab onto the ceiling for support (as Moldovan did).  *Id.*  The Second Department determined that the lower court should have awarded summary judgment to Lopez-Dones on her Section 240(1) claim.[7] *Id.* at 479.

As Moldovan carried his *prima facie* burden on both the statutory violation and causation, the burden shifts to defendants to present evidence that the ladder was adequately secured and / or that Moldovan's conduct was "the sole proximate cause of his injuries."  *Blake*, 1 N.Y.3d at 290.  As noted above, defendants do not meaningfully endeavor to present such

---

[7] Defendants attempt to distinguish *Lopez-Dones,* stating that "the facts are not similar to the case at bar."  Def. Mot. 20.  Yet the distinction defendants draw is that the *Lopez-Dones* ladder moved because it was struck by a loaded dolly.  *Id.*  The defendants have not adequately articulated why this distinction carries any legal significance.

evidence.  Instead, they argue variously that (a) the ladder was itself an adequate device because Moldovan did not identify a defect with the ladder; (b) Moldovan must have lost his balance and was therefore the sole proximate cause of his injuries; and (c) Moldovan should have used a taller ladder.  *See* Def. Mot. for Summary J. 18, 23-25 ("Def. Mot."), ECF No. 77.

But none of these arguments would give rise to a dispute of *material* fact.  As noted above, Molodovan is not obligated to establish that the ladder was defective.  And the contention that he lost his balance is no defense here, as defendants have proffered no evidence suggesting Moldovan lost his balance.  *See* Def. 56.1 ¶¶ 16-17.[8]  They also concede that the ladder was sufficiently tall.  *See id.* ¶ 13.

Two defendants — 635 Rockaway and Prestige Construction — do not dispute that Section 240(1) liability should extend to them in the case of a statutory violation.  *See generally* Def. Mot. 25-29 (arguing only that TFK is not a proper Section 240(1) defendant).  Given that no reasonable jury could find for 635 Rockaway and Prestige Construction, on this record, on the issues of statutory liability and proximate cause, summary judgment is therefore appropriate against them.  TFK

---

[8] Defendants cite several cases where the ladder did not move and the Plaintiffs lost their balance, thus no liability was imposed upon defendants. *See* Def. Mot. 18-20.  These cases are not relevant here, where it is undisputed that the ladder shifted.  *See* Def. 56.1 ¶ 16.

Electric does, however, contest that it is covered by Section 240(1) in this case.

### 3. TFK Electric Had the Authority to Supervise and Control Moldovan's Work

Summary judgment on Moldovan's Section 240(1) claim is appropriate against TFK Electric, in addition to 635 Rockaway and Prestige Construction, as the evidence permits no genuine dispute that TFK had the authority to supervise and control Moldovan's work.

Liability under Section 240(1) extends to "[a]ll contractors and owners and their agents." Moldovan asserts that TFK is liable as the agent of Prestige Construction. *See* Pl. Mot. for Summary J. 14-17 ("Pl. Mot."), ECF No. 81; Second Am. Compl. ¶¶ 23-24, ECF No. 74. TFK responds that it was not a statutory "agent" because it did not control Moldovan's work. *See* Def. Mot. 26-29.

Not all agents are liable for violations of Section 240(1). A subcontractor becomes responsible as a Section 240(1) "agent" only if the subcontractor has the "authority to supervise and control [the] work" in which the accident arises, *Russin v. Louis N. Piciano & Son*, 54 N.Y.2d 311, 318 (N.Y. 1981), and "the authority to insist that proper safety practices be followed." *Grochowski v. Ben Rubins, LLC*, 81 A.D.3d 589, 591 (N.Y. App. Div. 2nd Dep't 2011).

"[A] general supervisory role is sufficient to hold an agent liable if the agent also has the ability to coordinate the work performed and ensure compliance with safety regulations." *Guenther v. Modern Continental Companies*, No. 06-CV-1420, 2007 WL 2230158, at *4 (E.D.N.Y. August 1, 2007) (collecting cases). That is, an agent holds a general supervisory role under Section 240(1) if it has *the right* to exercise control over a plaintiff's work, whether or not the agent actually exercised that right. *See Samaroo v. Patmos Fifth Real Estate, Inc.*, 102 A.D.3d 944, 946 (N.Y. App. Div. 2d Dep't 2013). And a contracting firm is deemed to retain such authority when it subcontracts work. Thus, in *Weber v. Baccarat, Inc.*, one subcontractor manifested its authority to supervise and control the plaintiff's work "by subcontracting a portion of the HVAC work to plaintiff's employer" (a second subcontractor). 70 A.D.3d 487, 488 (N.Y. App. Div. 1st Dep't 2010). Given this relationship, the subcontractor "was a statutory agent" of the general contractor. *Id.*

Similar to *Weber,* the evidence here allows no conclusion but that TFK was an "agent" pursuant to Section 240(1). Moldovan was injured in the course of work delegated to TFK and then further subcontracted to his employer, AS HH.[9] *See*

---

[9] Further delegating its work to AS HH did not relieve TFK of its statutory obligations. *See Mogrovejo v. HG Hous. Dev. Fund Co., Inc.*, 172 N.Y.S.3d 40, 44-45 (N.Y. App. Div. 2nd Dep't 2022).

TFK / AS HH Contract, Def. Ex. H, ECF No. 77-8.  Jozef Torok

testified on behalf of TFK that the company's work included

"installing light fixtures" at the site — the precise task that

Moldovan was performing when injured.  Torok Dep. Tr. 68:4-21.

Moreover, Torok acknowledged that "if [he] saw something on the

job site when [he] was there that was either dangerous, or could

have caused harm to an employee," he could "stop[] that work

from continuing."  *Id.* at 24:10-15.  Thus, Moldovan was injured

while performing work TFK controlled, and TFK had sufficient

authority to supervise site safety for Section 240(1) agency.

In opposition, TFK cites cases where a subcontractor

was not found to be a Section 240(1) agent.  *See* Def. Mot. 27-

29.  However, in these cases, the subcontractors'

responsibilities did not extend to the work leading to the

plaintiff's injury.  *See, e.g.*, *Russin*, 54 N.Y.2d at 317-18

(contractors engaged for plumbing, HVAC, and electrical work

were not Section 240(1) agents liable for plaintiff's accident

while dismantling scaffolding); *Haidhaqi v. Metropolitan Transp.

Auth.*, 153 A.D.3d 1328, 1329 (N.Y. App. Div. 2nd Dep't 2017) (no

liability for contractor engaged to rehabilitate a subway

station — work that "was entirely distinct from, and unrelated

to, the injury" that plaintiff suffered).  That is not the case

here.

Thus, plaintiff's Section 240(1) motion is granted

against all defendants.  Defendants' cross-motions are denied.

**B.    Section 200 Claim**

All parties also moved for summary judgment on plaintiff's claim alleging a violation of New York Labor Law § 200.  Section 200 requires that worksites be "so . . . equipped, arranged, operated and conducted as to provide reasonable and adequate protection to the lives, health and safety of all persons employed" there.  *Id.* § 200(1).  It codified "the common-law duty imposed upon an owner or general contractor to maintain a safe construction site."  *Rizzuto v. L.A. Wenger Cont. Co.*, 91 N.Y.2d 343, 352 (N.Y. 1998).  Section 200 liability may also extend to an owner or general contractor's agent.  *See Russin*, 54 N.Y.2d at 317.

When assessing a party's liability on this claim, the Court first considers whether the workplace was unsafe and, if so, whether that unsafe condition resulted from the defendants' failure to use reasonable care.  *See id.; see also* N.Y. Civil Pattern Jury Instr. § 2:216.  A party has a duty of care under Section 200 only if it actually "*exercised* some supervisory control over the operation" in which the plaintiff was injured, *Ross v. Curtis-Palmer Hydro-Elec. Co.*, 81 N.Y.2d 494, 505 (N.Y. 1993) (emphasis added), or had actual or constructive notice of the unsafe condition.  *See Chowdhury v. Rodriguez,* 57 A.D.3d 121, 128 (N.Y. App. Div. 2d Dep't 2008).

Given this language, the requisite level of control for liability under Section 200 is higher than Section 240(1). "[I]t is well settled that where [a] dangerous condition arises from a subcontractor's own methods in performing the work, and the general contractor *exercises* no supervisory control over the operation, no liability attaches to the general contractor either under the common law or under Labor Law § 200." *Lillis v. Cofire Paving Corp.*, 226 A.D.2d 592, 593 (N.Y. App. Div. 2d Dep't 1996) (emphasis added). Specifically, the "right to generally supervise the work, stop the contractor's work if a safety violation is noted, or to ensure compliance with safety regulations and contract specifications," is insufficient for liability. *Marquez v. L & M Dev. Partners, Inc.*, 141 A.D.3d 694, 698 (N.Y. App. Div. 2d Dep't 2016).

Rather, a party exercises the requisite level of control for Section 200 liability only if it *actually* directs the manner and method in which work is being performed. In *Loiacono v. Lehrer McGovern Bovis, Inc.*, the court explained this higher standard, holding that the defendant did not exercise the requisite control for liability. 270 A.D.2d 464, 465 (N.Y. App. Div. 2d Dep't 2000). The panel wrote:

> Although Lehrer McGovern coordinated the contractors at the site, told contractors where to work on a given day, and had the authority to review safety on the site, this conduct does not rise to the level of supervision or control necessary to hold Lehrer

McGovern liable for Loiacono's injuries.  As Loiacono
testified at his examination before trial, his
employer supplied him with his equipment for the job,
and he determined how to go about installing the stone
on his own.

*Id.*

Other courts have followed *Loiacono*.  For example, in
*Perri v. Gilbert Johnson Enterprises*, the court granted the site
owner's motion for summary judgment because there was "no
evidence in the record that the owner supervised the manner in
which the work was performed," notwithstanding that the owner
visited the site "sometimes once or twice a week, sometimes
every two weeks."  *Id.* at 683.  Likewise, the court in *Phillip
v. 525 East 80th Street Condominium* held that plaintiff's
Section 200 claim was properly dismissed because there was "no
evidence that defendant supervised or controlled plaintiff's
work activities . . . ."  93 A.D.3d 578, 579 (N.Y. App. Div. 1st
Dep't 2012).

1.    635 Rockaway Did Not Exercise the Requisite
      <u>Control for Liability</u>

On the existing record, no reasonable juror could find
635 Rockaway liable under Section 200.  It is undisputed that
635 Rockaway's representatives were at the site only
periodically to check in on construction progress.  *See*
Wolcowitz Dep. Tr. 23:2-24:4, 37:11-25.  Wolcowitz did testify
that if he saw unsafe work, he would attempt to stop it by

speaking to the general contractor. *Id.* at 25:10-27:19.
However, Moldovan has adduced no evidence that 635 Rockaway
actually *exercised* this authority. Instead, his argument boils
down to the assertion that 635 Rockaway *could* control his work,
which is insufficient. *See* Pl. Mot. 18-19.[10]

Thus, the record here resembles the facts in *Perri*,
where the owner's occasional presence at the site was
insufficient for liability under Section 200. *See Perri*, 14
A.D.3d at 683. Therefore, 635 Rockaway's motion is granted with
respect to Section 200, and plaintiff's corresponding motion
against 635 Rockaway is denied.

2. There are Issues of Material Fact Regarding
Whether Prestige Construction Exercised the
Requisite Control

There remain genuine issues of material fact regarding
whether Prestige Construction exercised the control necessary
for liability under Section 200.

In its contract with 635 Rockaway, Prestige
Construction was vested with "control over construction means,
methods, techniques, sequences and procedures, and for
coordinating all portions of the Work under the Contract

---

[10] Some Appellate Division cases (that Moldovan cites) find that the
*right* to exercise control over a plaintiff's work is sufficient for Section
200 liability. *See* Pl. Mot. 18 (citing *Moscati v. Consol. Edison Co. of N.Y.
Inc.*, 168 A.D.3d 717, 720 (N.Y. App. Div. 2d Dep't 2019)). However, this is
contrary to the New York Court of Appeals, which requires the actual exercise
of control. *See Ross*, 81 N.Y.2d at 505.

. . . .” 635 Rockaway / Prestige Contract, § 9.2.1, Def. Ex. F, ECF No. 77-6. The record reveals some evidence that Prestige exercised this control. Gerber Blanco, Prestige's safety supervisor, testified that he was at the construction site every day. *See* Def. 56.1 ¶ 22; Blanco Dep. Tr. 16:21-18:6, 21:14-22:16, Def. Ex. C, ECF No. 77-3. He conducted bi-weekly safety meetings with all workers, supervised all workers at the site, and walked the site daily. *See* Blanco Dep. Tr. 16:21-18:6, 21:14-22:16. Moreover, Moldovan's supervisor told Blanco about the accident soon after it occurred, Blanco went to investigate, and later wrote an accident report. Def. 56.1 ¶ 23-24; Blanco Dep. Tr. 29:15-30:11, 31:14-32:10. Plaintiff contends that these facts demonstrate Prestige had the requisite authority over his work for Section 200 liability. *See* Pl. Mot. 19-20.

Prestige argues that it did not actually exercise supervisory safety authority over Moldovan.[11] *See* Def. Mot. 22. Blanco testified that he did not work with AS HH, and did not know whether its employees were present at the construction site. *See* Blanco Dep. Tr. 20:3-8. Additionally, Blanco testified that he did not tell subcontractor employees what to do; each company's supervisor conveyed daily tasks to their own

---

[11] Prestige (as well as TFK Electric and 635 Rockaway) also argue they did not have "notice of any dangerous or hazardous condition at the premises," which plaintiff does not dispute. *See* Def. Mot. 8; *see generally* Pl. Mot. 18-20.

employees.  *Id.* at 21:18-24.  When asked who told the supervisors what to do, Blanco replied "[t]hey have the blueprints."  *Id.* at 21:25-22:2.

On this evidence, a dispute of fact remains.  Thus, the Court denies both Prestige Construction's motion and plaintiff's motion against Prestige Construction on this claim.

3.    TFK Electric Did Not Exercise the Requisite
      Degree of Control

By contrast, no reasonable juror could find TFK Electric liable under Section 200.  Although TFK had personnel on site, held periodic site meetings, and could stop unsafe work if observed, Moldovan has proffered no evidence that TFK actually exercised this authority over his work.  *See* Torok Dep. Tr. 13:18-25, 24:10-25:16.  In the absence of such evidence, TFK cannot be liable under Section 200.  *See Loiacono,* 270 A.D.2d at 465.

Moldovan argues once more that TFK is liable under the statute because it had the right to exercise control over his work.  Pl. Mot. 20.  But as noted above, this argument applies the wrong legal standard for Section 200; the actual exercise of authority is necessary for liability.

Thus, the Court grants TFK's motion for summary judgment on Section 200 and denies plaintiff's motion against TFK on the same claim.

## IV.  Conclusion

For the reasons discussed, both motions for summary judgment are granted in part and denied in part.  A pre-trial conference is scheduled for July 9, 2025 at 10:30 AM in Courtroom 6G North.


SO ORDERED.


                                     /s/ Eric Komitee
                              ERIC KOMITEE
                              United States District Judge


Dated:    March 31, 2025
          Brooklyn, New York